**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ELIZABETH ROGERS DEPERI, M.D.,

     *Plaintiff,*

vs.                         CASE NO:

MAYO CLINIC FLORIDA, a Florida
non-profit corporation,

     *Defendant.*

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**INJUNCTIVE RELIEF REQUESTED**

    Plaintiff Elizabeth Rogers DePeri, M.D., sues Mayo Clinic Florida, a Florida non-profit corporation ("Mayo Clinic Florida," "MCF," or "Defendant"), and alleges:

**I.    Summary of Action**

    Plaintiff Elizabeth Rogers DePeri, M.D. was employed as a Diagnostic Radiologist by Defendant Mayo Clinic Florida, in Jacksonville, Florida, from April 2, 2000 until her unlawful termination on September 9, 2019.  Defendant elected to terminate Plaintiff, a qualified individual with a disability or handicap, rather than accommodate her requests for reasonable accommodation.

**II.    Nature of Claims**

    1.    ADAAA and FCRA.  Defendant's refusal to accommodate Plaintiff's requests for reasonable accommodation and its termination of Plaintiff's employment

violate the Americans With Disabilities Act Amendments Act (ADAAA), 42 U.S.C. § 12101, et. seq., and the Florida Civil Rights Act (FCRA), Fla. Stat. § 760.01, et. seq., prohibiting "handicap" discrimination.

**III.    Jurisdiction**

2.    The Court has jurisdiction of Plaintiff's claims under the ADAAA (disability) under 28 U.S.C. § 1331 and may exercise supplemental jurisdiction of Plaintiff's FCRA claims (handicap) under 28 U.S.C.§1367.

**IV.    Venue**

3.    Defendant does business in Florida and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Jacksonville, Florida such that venue is proper within this Court, pursuant to 28 U.S.C. §1391(b)(2).

**V.    Compliance with Administrative Pre-Requisites**

4.    Dr. DePeri has exhausted the required administrative remedies with the Equal Employment Opportunity Commission ("EEOC") prerequisite before bringing this action as required by the ADAAA and the FCRA, and she thereafter filed this Complaint in a timely manner.

**VI.    Parties**

5.    Plaintiff Elizabeth Rogers DePeri, M.D. is a licensed medical doctor in the State of Florida. She graduated from the University of Florida College of Medicine in 1993, completed her residency in Diagnostic Radiology at Baystate Medical Center in Springfield, Massachusetts, and was employed by Defendant Mayo Clinic her entire medical career. She enjoyed an excellent reputation at Mayo Clinic as a brilliant,

2

compassionate, and effective Diagnostic Radiologist until the illegal discrimination giving rise to this action.

6.      Defendant Mayo Clinic Florida is a Florida Not for Profit Corporation doing business as Mayo Clinic, a hospital and teaching facility at 4500 San Pablo Road, Jacksonville, Florida 32224, where the discrimination giving rise to this Complaint occurred.

**VII.    Statement of Facts**

7.      Plaintiff began working with Defendant as a Breast Imaging Diagnostic Radiologist in Jacksonville, Florida on April 2, 2000. Among other things, Dr. DePeri interpreted mammography, ultrasound, magnetic resonance and nuclear medicine imaging.

8.      Plaintiff served as Defendant's Breast Imaging Division Head, in Defendant's Radiology Department, from Dec. 2000 until approximately November 2008.

9.      During approximately 2003-2004, Plaintiff attained the status of Associate Professor with Defendant.

10.      On Plaintiff's annual performance reviews, Defendant always rated Plaintiff's performance as at least fully satisfactory. Plaintiff was never disciplined in any manner by Defendants.

11.      From January 2017 until Plaintiff's medical leave began in February 2018, there were seven other Diagnostic Radiologists employed in Jacksonville by

Defendant, with three working in the Breast Imaging Division on any given day. It was the practice of the three radiologists on any given day to work as a team.

12.    In early 2018 Plaintiff began undergoing medical treatment for major depression, anxiety, transient global amnesia and Post Traumatic Stress Syndrome ("PTSD") accompanied by cognitive impairment. These mental disabilities were affecting Plaintiff's thought processes, ability to concentrate, memory, and ability to perform her work with Defendant.

13.    Plaintiff's mental health disability was being treated by doctors and health care professionals employed by Defendant, among others. For example, Mary Hedges, M.D., Plaintiff's primary care physician employed by Defendant Mayo Clinic Florida, was informed by Dr. DePeri on February 1, 2018, that Dr. DePeri was suffering from "memory changes/forgetfulness." Dr. Hedges suggested Plaintiff consider time away from work pursuant to the Family and Medical Leave Act (FMLA), and referred Plaintiff to Rebecca Parry, who is an Advanced Registered Nurse Practitioner (ARNP), M.S.N., employed by Defendant Mayo Clinic in its psychiatric department.  Plaintiff has been continuously treated by Dr. Hedges and Ms. Parry, among others, since February 2018, related to her mental health and disabilities.

14.    Dr. Hedges initially suggested that Plaintiff take one month of continuous FMLA leave, followed by working four days per week from home (i.e., teleworking) for up to one year. Plaintiff, however, wanted to continue working onsite and asked that Dr. Hedges instead allow her to work two days per week from home and two days per week onsite at Mayo. Dr. Hedges agreed with Plaintiff's suggestion.

15.    On or about February 7, 2018, Dr. Hedges notified Defendant in writing that Dr. DePeri's symptoms were worsening "with cognitive issues arising."  Dr. Hedges completed a Certification of Health Care Provider for Medical Leave (FMLA) dated February 7, 2018 and provided it to Defendant.  It identified Plaintiff's diagnoses as "SVT (supraventricular tachycardia), PTSD (Post Traumatic Stress Disorder), Depression and Anxiety due to situational stressors, as a consequence, change in memory and focus needs treatment intensive x 4 weeks, then reduced schedule and reduced driving to accommodate ongoing treatment and cardiac condition worsens with stress." Dr. Hedges requested that Plaintiff be allowed temporary medical leave followed by temporarily working four days per week, "2 days per week work remotely from home (and) 2 days per week @ Mayo."

16.    This request was ignored by Defendant.  Accordingly, on or around March 15, 2018 Plaintiff requested a meeting with Defendant's HR Representatives.

17.    On March 20, 2018 Plaintiff met with her Operations Administrator, her Department Chair, and Defendant's Human Resources Representative. No accommodations were offered by Defendant. Dr. DePeri notified Defendant during this meeting that Dr. Hedges had instructed Plaintiff not to return to work on Defendant's campus in the near future, stating that Plaintiff could continue to perform her job but that she must work exclusively from home for a temporary period until she recovered enough to return to work on site with Defendant.

18.    Dr. Hedges provided Defendant with a Certification of Health Care Provider for Medical Leave (FMLA) dated March 23, 2018.  It identified Plaintiff's

diagnoses as "Post Traumatic Stress Disorder, Situational Amnesia, ventricular ectopy with significant symptoms of chest pain, palpitations, dizziness, headaches," and noted that Plaintiff had been referred to additional health care providers for psychiatric and psychological treatment.

19.     Dr. Hedges' initial request that Plaintiff be allowed to work four days per week, including two days from home and two days on site, for a temporary period of up to a year, was a request for a reasonable accommodation.  Plaintiff would have been able to perform the essential requirements of her job with the requested accommodation and it would not have created an undue hardship for Defendant to have allowed the requested accommodation.

20.     Dr. Hedges' subsequent request that Plaintiff be allowed to work exclusively from home for a temporary period of up to one year was a request for a reasonable accommodation.  Plaintiff would have been able to perform the essential requirements of her job with the requested accommodation and it would not have created an undue hardship for Defendant to have allowed the requested accommodation.

21.     On April 16, 2018, Defendant notified Plaintiff that her requests for accommodation were denied.  The requests were denied without any discussion between Defendant and Plaintiff after the March 20, 2018 meeting described in paragraph 17, above.  Defendant thereafter failed to engage in any interactive process to accommodate Plaintiff's disabilities, even though Plaintiff made it clear that she wanted to continue her employment with Defendant.  Defendant confirmed in

6

subsequent correspondence dated September 6, 2018 that it had denied Plaintiff's requests for accommodation.

22.    During Plaintiff's medical leave, Dr. Hedges and other health care professionals employed by Mayo Clinic Florida notified Defendant that Plaintiff had been diagnosed with Major Depressive Disorder, Severe Depression, Anxiety, PTSD, ventricular ectopy worsened with hyperadrenergic response (i.e., exacerbated by adrenaline-fueled stress), and transient global amnesia associated with stress reaction, among other things. Plaintiff's treating health care providers, including those employed by Defendant Mayo Clinic, unanimously agreed that it was necessary for Plaintiff to temporarily work away from Defendant's campus in order to recover and be able to return to work full time on Defendant's campus. All this information was provided in writing to Defendant, but Defendant denied the requests for accommodation of Plaintiff's treating physicians—*including Plaintiff's treating physicians and health care providers employed by Defendant itself.*

23.    On or about September 28, 2018, while Plaintiff was still unable to report to work due to her mental health disability, Defendant sent Dr. DePeri an email which purported to require her to make a choice between two options: (1) she could "apply and compete for a[nother] job within Mayo," within the next 90-days (with no severance if she was not selected for another job within the 90-day period); or (2) she could resign and accept twelve (12) weeks of severance pay. Defendant gave Plaintiff only four days to make her decision, asking for a response by October 12, 2018.

24.    The "option" of "compet[ing] for [another] job within Mayo" described in paragraph 23, above, was merely illusory because Defendant flatly refused to allow Plaintiff the reasonable accommodations requested by its own health care providers treating Plaintiff.  Defendant also expressly told Plaintiff not to apply for any full-time opening if she was not medically cleared to work full time (while Defendant was aware that Plaintiff was not medically cleared to work full time). Defendant also informed Plaintiff that it was not in need of any part-time help in the Radiology Department. Plaintiff declined the "option" of terminating her nearly twenty (20) years of employment in exchange for "12 weeks of severance pay."

25.    Plaintiff remained on unpaid medical leave until Defendant terminated her employment on September 9, 2019.

## COUNT I
**(ADAAA Failure to Accommodate/Terminate)**

26.    Plaintiff re-alleges paragraphs 12-25.

27.    Dr. DePeri at all times material was a qualified individual with a disability.  Her PTSD, major depressive disorder, anxiety, and transient global amnesia, alone and/or in combination, were mental impairments which substantially limited her major life activity of brain function, as recognized at 29 C.F.R. §1630.2(j)(3)(ii) and (iii).  These impairments also substantially limited Plaintiff's major life activities of thinking, concentrating, and interacting with others, as recognized at 29 C.F.R. Part 1630 App., § 1630.2(j)(3), 76 Fed. Reg. 16978, 17012 (Mar. 25, 2011).

28.    Dr. DePeri's treating physicians and other health care providers requested a reasonable accommodation when asking that Defendant permit Plaintiff to work remotely, either part-time or full-time, on a temporary basis, as set forth above in paragraphs 19 and 20.

29.    Plaintiff would have been able to perform the essential requirements of her job when working from home as part of a three-physician team, and it would not have caused an undue hardship for Defendant to provide the accommodation requested. In fact, the equipment necessary for Plaintiff to work from home was ready and available for her use, but Defendant nevertheless unreasonably refused to allow Plaintiff to use it.

30.    Because of Defendant's refusal to provide Plaintiff with the reasonable accommodations requested by her treating physicians and other health care providers, including those employed by Defendant at Mayo Clinic Florida, Plaintiff was unable to return to work and Defendant consequently terminated her employment of nearly twenty (20) years on September 9, 2019.

31.    Defendant's failure to provide the reasonable accommodation requested by Plaintiff's treating physicians violated the ADAAA and caused Plaintiff's termination which also violated the ADAAA.

32.    Defendant's unlawful conduct described in paragraph 31 caused Plaintiff's extended medical leave due to mental health issues, resulting in Plaintiff's termination.  As a result, Plaintiff's reputation and employability have been damaged

or destroyed, rendering Plaintiff unable to obtain substantially equivalent employment for the duration of her work-life expectancy.

## COUNT II
### (FCRA Failure to Accommodate/Terminate)

33.     The wrongful conduct described in Count I above violates the Florida Civil Rights Act prohibiting "handicap" discrimination, entitling Plaintiff to the remedies afforded by that Act.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands the following relief under the ADAAA and the FCRA:

a.      Compensation for lost earnings and fringe benefits from the date she last received them from Defendant, until the day of the jury's verdict (collectively Plaintiff's "past lost earnings");

b.      If feasible, reinstatement to the position Plaintiff last held with Defendant, with the same status and benefits she would have enjoyed had Defendant timely provided the accommodation requested by Plaintiff's treating doctors and health care providers;

c.      If reinstatement is not feasible, then Plaintiff demands front pay to the maximum extent permitted, including compensation for the loss of her earnings and fringe benefits from the day of the jury's verdict to the end of Plaintiff's work-life expectancy (collectively, "front pay");

d. Damages for Plaintiff's mental anguish, emotional distress, humiliation, loss of enjoyment of life and other intangible losses occasioned by Defendant's wrongful conduct;

e. Punitive damages to the maximum extent allowable by law;

f. Attorneys' fees and costs, including litigation expenses and expert witness fees and expenses; and

g. Trial by jury of all issues so triable.

Dated: December 9, 2019.

FORTUNE LAW OFFICES

By: _s/_ Scott Thomas Fortune _____
Scott Thomas Fortune
Florida Bar No. 342815
Primary Email: SFortune@FortuneLegal.com
Secondary Email: legal@FortuneLegal.com
1807 3rd St. N.
Jacksonville Beach, Florida 32250
Telephone: (904) 246-2125
Facsimile: (904) 246-1551

– and –

BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
Professional Association

Michael E. Lockamy
Florida Bar No. 69626
Primary Email: mel@bedellfirm.com
Secondary Email: he@bedellfirm.com
Michael E. Halkitis, Jr.
Florida Bar No. 30342
Primary Email: meh@bedellfirm.com
Secondary Email: he@bedellfirm.com
The Bedell Building

11

101 East Adams Street
Jacksonville, Florida 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307

Attorneys for Plaintiff